IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TERESA GOFF** **PLAINTIFF**

v.   CAUSE NO. 1:13CV96-LG-JMR

**SINGING RIVER HEALTH SYSTEM** **DEFENDANT**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Summary Judgment [36] filed by defendant Singing River Health System. Plaintiff Teresa Goff has responded, and Singing River has replied. Goff claims that Singing River retaliated or discriminated against her by terminating her employment after she used leave that was protected under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that Goff has provided sufficient evidence to prove a prima facie case and to demonstrate that Singing River's purported reason for terminating her employment was pretext for retaliation or discrimination related to her use of FMLA leave. Singing River Health System's Motion for Summary Judgment will be denied.

### FACTS AND PROCEDURAL HISTORY

Singing River Health System employed Teresa Goff as a surgery technician at its Ocean Springs Hospital beginning September 2000. She resigned in lieu of termination on February 18, 2011.

Goff testified that her performance reviews were excellent until 2005, when

her score suffered a drop because of an excessive number of "unscheduled occurrences and missed punches," meaning that she was "having too many unscheduled absences in accordance with the [attendance] policy." (Goff Dep. 45-46, ECF No. 40-1; Def. Mot. Summ. J. Ex. 9 at 7, ECF No. 36-8). Goff's 2008 evaluation shows that she excelled in performance in every area except attendance and punctuality. Her supervisor noted that she was a valuable member of the team "but needs to work on attendance and punctuality." Another noted that "Teresa has the tools to exceed expectations, but her time and attendance is problematic. We will continue to monitor Teresa's ability to be present and focused in the coming months." (Def. Mot. Summ. J. Ex. 19 at 7, ECF No. 37-9). Her 2009 evaluation includes the comments, "Teresa is a member of the Open Heart team which functions as a 'system' team. . . . Teresa needs to work on team building and increasing commitment to the team by decreasing her absences." (Def. Mot. Summ. J. Ex. 23 at 7, ECF No. 38-3). Her 2010 evaluation contains comments such as "never sure if Teresa will be coming to work," "often calls on workday mornings with reasons for not coming to work," and "poor communication re: FMLA issues." (Def. Mot. Summ. J. Ex. 25 at 3, 4, ECF No. 38-5). Her supervisor's overall comments were that "Teresa has had excessive absences and is frequently out for FMLA unannounced. Due to her absences she has not kept up with her online classes or changes within the department. I hope to see improvement in the coming year." (*Id*. at 7). In all, Goff was disciplined twelve times under the attendance policy. (Def. Mot. Summ. J. Ex. 2 at 2 (¶11), ECF No. 36-1).

On October 1, 2008, Goff was authorized to take intermittent FMLA leave to care for her mother, who was suffering from a serious health condition. (*Id.* (¶7)). This authorization was renewed on October 1, 2009 and October 1, 2010. (*Id.*). Under Singing River's attendance policy, failure to follow the guidelines for not reporting to duty is considered an "unscheduled occurrence," whether or not the absence is FMLA-related. (Def. Mot. Summ. J. Ex. 3 at 1 (¶3), ECF No. 36-2). Goff was required to report absences to the Patient Care Manager by leaving a message on the Operating Room Patient Care Manager's voice mail or by notifying the board runner by 6 a.m. that day. (*Id.* at 2 (¶5)).

Goff received a written conference for her failure to follow this procedure on September 21, 2009. She had to take her mother to the hospital on a day she was scheduled to work, but she did not call Singing River as required. Goff was warned that "[f]urther incidences of similar nature will result in additional disciplinary actions." (Def. Mot. Summ. J. Ex. 21, ECF No. 38-1).

It is undisputed that Goff did not call Singing River until 7:06 a.m. on February 9, 2011, to inform the patient care coordinator, Jason Ely, that she would be absent. Ely states in his affidavit that he told Goff she was needed for a case that day, and although she told him she would come in, she never showed up. (Def. Mot. Summ. J. Ex. 29, ECF No. 38-9).

Singing River terminated Goff because she had accumulated fourteen unscheduled absences between February 9, 2010 and February 9, 2011. (Def. Mot. Summ. J. Ex. 3 at 2 (¶9), ECF No. 36-2; Ex. 7 at 2-3 (¶¶8-18), ECF No. 36-6).

Singing River's attendance policy provides that accumulating ten unscheduled absences in a rolling twelve month period can result in termination of employment. (Def. Mot. Summ. J. Ex. 2 at 2 (¶10), ECF No. 36-1).

Goff's supervisor, Debra Taranto, made the recommendation for Goff's termination. (Def. Mot. Summ. J. Ex. 3 at 2 (¶8), ECF No. 36-2). Ocean Springs Hospital's human resources manager, Carla Pierce, reviewed the recommendation and Goff's attendance record. (*Id.*) Taranto's supervisor, Jury (Wurstner) Powers, the Vice President of Surgical Services, also reviewed Taranto's recommendations for termination. (Def. Mot. Summ. J. Ex. 7 at 1 (¶¶2, 4), ECF No. 36-6). Together, Taranto and Pierce spoke to the Director of Human Resources, Nebo Carter, who approved Taranto's recommendation for Goff's termination. (*Id.*)

After her termination, Goff applied for unemployment benefits. The Mississippi Department of Employment Security denied benefits after concluding that she had been discharged for misconduct connected with the work. (Pl. Resp. Ex. B, ECF No. 42-2). On appeal, the Administrative Law Judge determined that Singing River had failed to prove that Goff "was discharged for misconduct connected with the work as defined by *Wheeler vs. Arriola*." (*Id.* at 2). Accordingly, Goff was awarded benefits effective February 18, 2011. (*Id.*).

## THE FAMILY MEDICAL LEAVE ACT

Under the FMLA, employees may take up to twelve weeks of time off in a twelve-month period for medical reasons, 29 U.S.C. § 2612(a), and it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to

exercise" this right to take approved leave. *Id*. § 2615(a)(1). "[E]mployers have a prescriptive obligation [ ] - they must grant employees substantive rights guaranteed by the FMLA - and they have a proscriptive obligation - they may not penalize employees for exercising these rights." *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). Goff's claim implicates the proscriptive FMLA rights, which include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004); *see also* 29 C.F.R. § 825.220(c) (1997) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

A plaintiff bringing a retaliation claim must show "that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right;" thus, as a result, he "faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001). In the absence of direct evidence of the employer's intent, retaliation claims under the FMLA are subject to the same burden-shifting framework applicable to Title VII discrimination claims. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 793 (1973).

DISCUSSION

Goff alleges Singing River retaliated against her in two ways. First, Taranto

harassed her about taking FMLA leave. Second, she was terminated as a result of taking FMLA leave. Whether these claims are categorized as FMLA retaliation or discrimination, the burden-shifting framework employed in cases of indirect evidence applies. *Brown v. City of Jacksonville*, 711 F.3d 883, 891 (8th Cir. 2013).

**1. Plaintiff's Prima Facie Case**

To establish a prima facie retaliation or discrimination claim under the FMLA, a plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder v. Metro. Transit Auth. of Harris Cnty, Tex.,* 446 F.3d 574, 583 (5th Cir. 2006).

Goff has established her prima facie case because she has shown that: (1) she engaged in the protected activity of requesting FMLA leave on February 9, 2011; (2) she was terminated on February 18, 2011; and (3) the temporal proximity between those two events establishes the requisite causal link for a prima facie case. *See Grubb v. Southwest Airlines,* 296 F. App'x. 383, 390 (5th Cir. 2008) (citing *Mauder,* 446 F.3d at 583) (emphasizing "temporal proximity" in the prima facie context)).

**2. Defendant's Legitimate, Non-Discriminatory Reasons**

Singing River asserts that it terminated Goff, not in retaliation for taking FMLA leave, but for repeatedly violating Singing River's policies and procedures. An anti-retaliation statute does not allow an employee to violate company job

requirements or work rules. *Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 n. 3 (5th Cir. 1997). Violation of work rules is a legitimate, nondiscriminatory reason for an adverse employment action. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir. 1995).

Goff contends that Singing River is collaterally estopped from asserting its legitimate, nondiscriminatory reason because the Court must give preclusive effect to the findings of the Mississippi Department of Employment Security, which "has ruled that Defendant's assertions are not true" in granting her unemployment benefits. (Pl. Resp. Memo. 12, ECF No. 43).

The law is clear that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799 (1986) (internal quotation marks, alteration, and citation omitted). "Under Mississippi law, res judicata or collateral estoppel precludes relitigation of administrative decisions." *Smith v. Univ. of Miss.,* 797 So. 2d 956, 963 (Miss. 2001); *Zimmerman v. Three Rivers Planning & Dev. Dist.,* 747 So. 2d 853, 861 (Miss. Ct. App. 1999). "'Once an agency decision is made and the decision remains unappealed beyond the time to appeal, it is barred by administrative res judicata or collateral estoppel.'" *A & F Prop., LLC v. Madison Cnty. Bd. Of Sup'rs,* 933 So. 2d 296, 302 (Miss. 2006) (quoting *Zimmerman,* 747 So.

2d at 861).

Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment. *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005).

The MDES first determined that Goff had been discharged for "misconduct connected with the work." (Pl. Resp. Ex. B, at 1, ECF No. 42-2). Goff appealed this determination. An Administrative Law Judge conducted a telephonic hearing and issued a written decision. (*Id.*). He listed Goff's unscheduled absences from work between February 2010 and February 2011, and her reasons for being absent in each instance. In regard to Goff's last absence, he stated:

> The claimant's mother became ill on February 09, 2011. The claimant took her mother to the doctor and called her employer as soon as she had time to inform of the absence. The employer considered the claimant to be a no call/no show for work since her call on February 9, 2011, was after the shift began and discharged the claimant from her employment February 18, 2011, due to her attendance.
>
> . . .
>
> The majority of the claimant's absences were for illnesses and one related to her mother's illness for which she was on FMLA to provide care. The claimant did miss one day due to a no call/no show and two others for personal reasons. However, when the entire record is examined, the claimant had good cause to miss for all but three of her absences.
>
> The employer has failed to prove the claimant was discharged for misconduct connected with the work as defined by *Wheeler v. Arriola.*

(*Id.*).  Relying on this language, Goff contends that the ALJ has already determined that for purposes of the FMLA, she gave notice of her unscheduled absence on February 9, 2011, as soon as practicable, and therefore she was entitled to be excused from Singing River's requirement that she telephone by 6:00 a.m. However, the inquiry under the FMLA is not whether Goff gave notice of her need for FMLA leave as soon as practicable.  It is whether "unusual circumstances" prevented her from complying with Singing River's policy requiring her to give notice by 6:00 a.m.[1]  The ALJ found that Goff called Singing River late because she

---

[1] Department of Labor regulations state that an employer may impose notice requirements on an employee seeking to take unexpected FMLA leave.  29 C.F.R. § 825.303.  The first relevant regulation provides:

> When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.  It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave.  *See* § 825.303(c). Notice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally.  For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment.  However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.

29 CFR § 825.303(a).  The second provides:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For

had to bring her mother to the doctor. Is this an "unusual circumstance" under the FMLA? The ALJ's factual findings do not address this issue, and therefore collateral estoppel should not apply to prohibit inquiry into the evidentiary support for the reasonableness of Goff's notice. *See Hurst v. Lee Cnty., Miss.*, No. 3:12cv27-SA-SAA, 2013 WL 3243633, *3-4 (N.D. Miss. June 26, 2013).

Goff argues that her unusual circumstance was that she did not have advance notice of the need to bring her mother to the doctor, and she called Singing River as soon as she learned that her mother would have to go to the doctor. However, Goff has not pointed to any evidence supporting her assertion of unusual circumstances. The Court has reviewed her deposition testimony and notes that when asked specifically "tell me what you were doing with your mother that you could not get to the phone and call in by 6:00," Goff replied, "I can't say exactly what I was doing with my mother. I took care of my mother seven days a week, 24 hours

---

> example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 CFR § 825.303(c).

a day. To exactly say exactly what I was doing, I can't." (Goff Dep. 138:16-22, ECF No. 40-1).

Singing River does not dispute that Goff's absence on February 9, 2011, was FMLA-related and FMLA-qualifying. Nevertheless, "an employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA.*" *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011) (emphasis in original) (citing *Bacon v. Hennepin Cnty. Med. Ctr.,* 550 F.3d 711, 715 (8th Cir. 2008) ("Employers who enforce [call-in] policies by firing employees on FMLA leave for noncompliance do not violate the FMLA.") and *Lewis v. Holsum of Fort Wayne, Inc.,* 278 F.3d 706, 710 (7th Cir. 2002) (holding that an employer did not violate the FMLA by discharging an employee on FMLA leave when the employee failed to comply with a company call-in policy)).

> This is so because even if the FMLA entitles an employee to be absent from work, the employee's violation of a notice-of-absence policy can constitute "[a] reason for dismissal that is unrelated to a request for an FMLA leave." Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations.

*Twigg*, 659 F.3d at 1009.

Without any evidence to present to a jury regarding whether unusual circumstances existed that would excuse her failure to comply with Singing River's call-in policy, Goff cannot show a question of material fact on this issue. A

reasonable jury would have no basis to find that FMLA regulations required Singing River to excuse Goff from complying with the policy. The Court therefore concludes that Singing River has articulated a legitimate, nondiscriminatory reason for terminating Goff.

### 3. Plaintiff's Evidence of Pretext

Because Singing River has articulated a legitimate, non-discriminatory reason for Goff's termination, she must offer sufficient evidence to create a genuine issue of material fact that Singing River's reason is not true, but is instead a pretext for discrimination.[2]

Goff has not separately addressed pretext, but the Court discerns three arguments in her briefing that relate to whether her use of FMLA leave was the actual reason for her termination. First, Goff tried to explain her need for FMLA leave to Taranto when she came back to work on February 10, but Taranto would not listen to her. Second, Taranto had made negative comments about Goff's FMLA leave. Third, Taranto "made up false documents to further make her case for termination of Mrs. Goff." (Pl. Memo. 17, ECF No. 43).

In regard to her argument that Taranto had made negative comments about Goff's FMLA leave, Goff testified about two occasions when Taranto asked her if there was anyone else who could take care of her mother. (Goff Dep. 156-57, ECF

---

[2] Goff neither alleges or argues that this is a mixed-motives case requiring application of a modified form of the *McDonnell-Douglas* framework. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

No. 40-1). Also, during a conversation about the severity of Goff's mother's illness, Taranto commented that Goff's mother could not last much longer. (*Id.* at 157-58).

Where a decision-maker, or a person who provided input into the decision, expressed feelings around the time of, and in reference to, the adverse employment action complained of, then it "may be possible to infer that the decision makers were influenced by those feelings in making their decision." *Hunt v. City of Markham, Ill.,* 219 F.3d 649, 653 (7th Cir. 2000). *See also Vance v. Union Planters Corp.*, 209 F.3d 438, 442 (5th Cir. 2000). Taranto was admittedly a decision-maker in Goff's termination.

The Court finds little to connect Goff's FMLA leave and Taranto's comment that her mother couldn't last much longer. As Goff testified, the subject of the conversation was her mother's health. ("As far as I was telling [Taranto] how bad [mother] was. And [Taranto] said, well, how much longer can she last or – from as sick as she is.") (Goff Dep. 158). The comment did not relate specifically to any employment decision concerning Goff. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 224 (5th Cir. 2001).

However, Taranto's two inquiries about whether there was someone else who could take care of Goff's mother were clearly directed toward Goff's FMLA leave request. The significance of the statements is reduced by Goff's inability to recall when Taranto made these statements. Goff stated only that because she was taking FMLA leave "quite often," the timing had to be after, and in connection with, her leave. (Goff Dep. 156). Since Goff had been approved to take intermittent

FMLA leave for more than two years by the time she was terminated, the Court cannot assume that the comments were proximate in time to the employment decision. Goff certainly has presented no evidence of proximity. And although the comment suggested that Taranto was aware that Goff was taking intermittent leave "quite often," it was not made in reference to an adverse employment action.

Of greater significance however are comments Judy (Wurstner) Powers. On February 18, at some point during the resignation/termination process, Judy (Wurstner) Powers told Goff: "when you leave this office, you don't have to go to the board to tell them you are leaving. I will let them know. You don't have to call in the morning about momma. In fact, you won't have to call in ever again about momma." (Goff Dep. 160-61). According to Taranto's affidavit, Wurstner is the Vice President of Surgical Services, and she was one of the people responsible for reviewing Taranto's recommendations for termination. (Def. Mot. Summ. J. Ex. 7 at 1 (¶¶2, 4), ECF No. 36-6). Such a comment, by an individual who had an active part in the termination decision, cannot be characterized as a stray remark. Her comment was made directly to Goff after the decision to terminate Goff's employment and is therefore probative of management's reason for its decision. *See Damon v. Fleming Supermarkets of Fl., Inc.*, 196 F.3d 1354, 1362-63 (11th Cir. 1999) (comment made by management three months after termination); *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997) (comments by management one year after termination); *Latowski v. Northwoods Nursing Ctr.*, No. 12-2408, 2013 WL 6727331, *6 (6th Cir. Dec. 23, 2013) (comments made after

decision to terminate had been finalized). Taken together, Taranto and Wurstner's comments about Goff's FMLA leave could lead a reasonable jury to conclude that Singing River's reason for terminating her employment was pretext for retaliation or discrimination related to her use of FMLA leave.

## CONCLUSION

Goff has provided sufficient evidence to prove a prima facie case and to demonstrate that Singing River's purported reason for terminating her employment was pretext for retaliation or discrimination related to her use of FMLA leave. Singing River Health System's Motion for Summary Judgment should therefore be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [36] filed by defendant Singing River Health System is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 13th day of March, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE